THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SALVATORE DeCESARE, Defendant-Appellant.

Second District   No. 2—88—1114

Opinion filed November 17, 1989.

Terry Sullivan and Nancy J. Nicol, both of Law Offices of Terry Sullivan, Ltd., of Rolling Meadows, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and Eleesha Pastor O'Neill, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Salvatore DeCesare, was convicted of unlawful delivery of 15 or more grams of a substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)) and sentenced to a 10-year term of imprisonment. Defendant contends on appeal that the trial court made the following errors: (1) admitting into evidence three guns found in his bedroom during a search of his home; (2) admitting into evidence several plastic bags found in his laundry room during the same search; (3) denying defendant's motion for a new trial; and (4) denying defendant's motion to dismiss the indictment as a result of false testimony by a police officer before the grand jury. We affirm.

The charges against defendant in this case arose from an alleged cocaine sale by defendant to Jay Parker on January 30, 1988. Parker testified that he had been charged with a Class X felony prior to that date. The State's Attorney agreed to reduce this charge if Parker disclosed the name of his cocaine supplier. Although no deal was made concerning the sentence Parker would receive on the reduced charge, he was sentenced to a probationary term.

Parker testified that on the morning of January 30, 1988, he met with Steven Semenek, a detective with the Lake County sheriff's po-

lice, and several agents of the Lake County Metropolitan Enforcement Group (LCMEG) in Ivanhoe. Semenek searched Parker and his car. Parker placed a telephone call to defendant's car phone. Parker asked if they could meet at defendant's house in Barrington so that Parker could purchase an ounce of cocaine. Defendant agreed. Parker then drove to the house, but defendant was not home.

After leaving the house, Parker met Semenek at a grocery store parking lot in Wauconda. Parker placed another phone call to defendant, who was home. He then returned to defendant's house and entered the garage. Parker gave defendant $900 and defendant gave him a bag which contained a white powdery substance. Parker then returned to the grocery store parking lot and turned the bag over to Semenek. Some other law enforcement agents were also present, although Parker did not know who they were. Defendant subsequently stipulated that the bag turned over by Parker contained 25.3 grams of a substance containing cocaine. Semenek searched Parker and his car at the parking lot but did not find anything.

Parker stated that, as far as he knew, the law enforcement agents remained at the grocery store parking lot in Wauconda while he went to defendant's house to purchase the cocaine. The parking lot was five to seven miles from defendant's home. Parker testified that he did not look to see if the agents were following him and that it was possible they were.

Parker denied having sometimes entered defendant's home or garage when defendant was not present. He admitted that defendant loaned him $1,793 to pay for car repairs but stated that he repaid this sum two weeks after he borrowed it.

Detective Steven Semenek of the Lake County sheriff's police testified that he and several LCMEG agents met Parker in Libertyville at a sheriff's police substation at about 2 p.m. on the afternoon of January 30, 1988. Semenek searched Parker at this time and found no controlled substances. According to Semenek, Parker was directed to undo and drop his pants prior to the search. Semenek also searched the front seat, passenger's seat, glove compartment, and trunk of Parker's car. He found no controlled substances or money during this search. The agents then gave Parker $900 in prerecorded currency.

Parker then began driving toward Barrington. Semenek and LCMEG Agent Nugent followed him in one vehicle while LCMEG Agents Hunter and Heidecke followed him in another vehicle. Parker stopped near the intersection of routes 60 and 83 in Ivanhoe in order to use a pay telephone. He then continued driving to Barrington. Se-

menek saw him turn onto Border Lane in Barrington, the street where defendant resided. Semenek and Nugent then took up a surveillance position at a school on Route 59 about a quarter of a mile from defendant's residence. They could not see defendant's residence from this position. Parker was out of their sight for about 2 or 2½ minutes.

Semenek then saw Parker exit the area in his car and drive to a grocery store parking lot in Wauconda. The agents followed him to the parking lot, and Parker informed them that defendant was not home.

Semenek testified that Parker then made another telephone call. The agents once again followed him to the Border Lane area and took up surveillance positions. Parker was out of Semenek's sight for about five minutes. Semenek then saw Parker's car leave the area. Parker went back to the grocery store parking lot, and the agents followed him there. Parker turned over a white envelope with a plastic bag inside that contained a white powdery substance. Semenek then searched Parker and his car. Semenek did not find any money or controlled substances in this search.

Officer Syndy Nugent corroborated much of Semenek's testimony concerning the events of January 30, 1988. Nugent stated that she had been a police officer with the City of Zion for eight years and had been assigned to LCMEG for the past 2½ years. She had participated in 20 to 30 drug investigations as an undercover agent and had conducted surveillance in over 100 drug cases. Nugent testified that LCMEG is a drug-enforcement group.

As a result of the information supplied by Parker, the LCMEG agents received a search warrant for defendant's residence. Nugent was one of the agents who executed the warrant on February 10, 1988. While searching a downstairs room, Nugent found an Ohaus triple-beam scale which was admitted into evidence without objection. Nugent also testified that she found three plastic bags, one of which had been wrapped with yellow tape, on a shelf in the laundry room. She stated that in three other cases, she had seen similar items used for the packaging of cocaine. Nugent testified that she had seen similar packaging materials in cases involving half a pound of cocaine or more and that she had seen similar yellow tape used to wrap bags containing over a pound of cocaine. The plastic bags were admitted into evidence over defendant's objection.

Nugent also found three handguns while searching the bedroom shared by defendant and his wife. She found two revolvers on the top shelf of a closet which contained men's clothing. She found a .22 cali-

ber handgun in a drawer containing men's underwear in another closet. The drawer also contained an ammunition clip with five projectiles that fit into the gun. The handguns were admitted into evidence over defendant's objection.

On cross-examination, Nugent testified that the plastic bags she found could have a number of uses, as could the scale. She stated that the scale was found in a closet of a room which contained a tanning bed and tanning bulbs.

Defendant's housekeeper, Ronnie DeAngelo, testified that she had worked in his home for eight years. According to DeAngelo, the two entrances to defendant's garage were never locked. She testified that Jay Parker was in defendant's house just about every day, often when defendant was not around. Most of the time Parker was intoxicated.

DeAngelo testified further that the triple-beam scale in the house was used for weighing gold jewelry. She stated that Mrs. DeCesare sold jewelry during the Christmas season in her tanning salon. DeAngelo had not seen the plastic bags that were admitted into evidence but stated she had used similar bags for canning.

Defendant's wife, Cheri DeCesare, corroborated DeAngelo's testimony concerning the use of the triple-beam scale. She also testified that the garage was never locked and she had seen Jay Parker in the garage and the house at times when defendant was not home.

Mrs. DeCesare testified that she owned the three guns seized in the February 10, 1988, search. She bought the guns because she had previously been the victim of a burglary in her home. At one point, defendant owned a towing business and was often away at night. Mrs. DeCesare bought the guns because she was afraid of being home alone at night.

The jury found defendant guilty of the offense in question. Defendant subsequently filed an amended motion for a new trial based upon newly discovered evidence. Attached to the motion was an affidavit from Jay Parker in which he stated that he spoke to two of defendant's attorneys on September 20, 1988.

The affidavit states that during the above conversation, Parker told the attorneys that he did not have to remove any of his clothing before the officers searched him on January 30, 1988, and the officers merely performed a pat-down search. The affidavit further states that one of the officers merely looked inside and under the front seat of his car on that date and that the officers did not perform a complete search of the car at any time.

According to the affidavit, Parker told the attorneys that he was never followed by any marked or unmarked police cars when he drove

to defendant's home on the above date. The agents stayed in a grocery store parking lot and were always there when Parker returned to that location. The agents told Parker he would get 15 years in prison if he did not testify and that they would keep him in prison until he testified.

The trial court denied the amended motion for a new trial and also denied a post-trial motion to dismiss the indictment based upon allegedly false testimony by Agent Syndy Nugent before the grand jury. Nugent had testified that on January 30, 1988, she saw Parker park his car by defendant's residence and walk toward the residence. Defendant argued that from Nugent's surveillance position, it would have been impossible for her to see Parker park the car on Border Lane and walk toward defendant's home.

■ Defendant initially argues that the trial court erred by admitting into evidence the guns and plastic bags found in his residence 10 days after the offense allegedly took place. With regard to the guns, defendant cites the general rule that guns should not be admitted into evidence if they were not used in the commission of the offense or if they were not sufficiently connected to the offense. (*People v. Yelliott* (1987), 156 Ill. App. 3d 601, 603; *People v. McQueen* (1983), 115 Ill. App. 3d 833, 838; *People v. Wade* (1977), 51 Ill. App. 3d 721, 729.) Reviewing courts have recognized that substantial prejudice can result from the admission of guns which were not connected to the alleged offense. See *People v. Jackson* (1987), 154 Ill. App. 3d 241, 246; *Wade*, 51 Ill. App. 3d at 729.

■ Additionally, evidence suggestive of prior misconduct or commission of another crime by the accused is inadmissible unless it is relevant to establishing factors such as identity, intent, knowledge, motive, a common scheme, or a fact material to the trial issues. (*People v. Jones* (1977), 55 Ill. App. 3d 446, 452.) Even if the evidence has some probative value relating to one of the above factors, it should not be admitted if its prejudicial effect outweighs its probative value. *People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1078.

The State argues that the guns and the plastic bags were relevant evidence of defendant's intent to distribute cocaine. In *People v. Wright* (1986), 140 Ill. App. 3d 576, the court held that guns seized from defendant's apartment were relevant evidence in his trial for possession of a controlled substance with intent to deliver when approximately 300 grams of cocaine were also seized in the search. The court stated:

> "Knowing control of the 300 grams of cocaine found in his apartment was a material fact in issue, the State arguing that

the cache of weapons indicated defendant was protecting his illicit drug trade and defendant asserting that he did not know the cocaine was in his apartment. Thus, the evidence was relevant and its admission was proper." (*Wright*, 140 Ill. App. 3d at 580.)

In *People v. Schaefer* (1985), 133 Ill. App. 3d 697, the court affirmed defendant's conviction of possession of a controlled substance with intent to deliver, rejecting defendant's contention that the evidence was insufficient to establish that he intended to deliver the substance. Among the factors cited by the court in rejecting this contention were the presence of drug paraphernalia and the presence of weapons in defendant's home at the time the cocaine was seized. *Schaefer*, 133 Ill. App. 3d at 703.

Courts have held in a number of Federal cases that firearms seized from the residence of an accused charged with possession of controlled substances with intent to deliver are admissible evidence of intent where the firearms and the drugs were seized in the same search. (See, *e.g.*, *United States v. Savinovich* (9th Cir. 1988), 845 F.2d 834, 837; *United States v. Randle* (8th Cir. 1987), 815 F.2d 505, 508; *United States v. Payne* (D.C. Cir. 1986), 805 F.2d 1062, 1065.) These holdings are based upon the recognition that firearms "are as much tools of the trade as more commonly recognized drug paraphernalia" (*Payne*, 805 F.2d at 1065) and that it is reasonable to infer that an armed individual who possesses drugs intends something more than mere personal use (*Savinovich*, 845 F.2d at 837). Similarly, common packaging materials such as plastic baggies and ziplock bags which are seized along with drugs have been held admissible, relevant evidence of defendant's intent to distribute where defendant was charged with possession of a controlled substance with intent to deliver. See *Payne*, 805 F.2d at 1065; *United States v. Ushakow* (9th Cir. 1973), 474 F.2d 1244, 1246.

When the State alleges unlawful delivery of a controlled substance, it is required to prove defendant knowingly delivered the substance. (*People v. Chicon* (1977), 55 Ill. App. 3d 100, 105.) Knowledge is seldom susceptible of direct proof, and it may be established instead by evidence of defendant's acts, statements, or conduct from which an inference of knowledge may fairly be drawn. (*Chicon*, 55 Ill. App. 3d at 105.) The presence of tools of the narcotics trafficking trade such as the firearms, the scale, and the plastic bags could fairly lead to an inference that defendant was a narcotics dealer and a further inference that he knew the substance in the plastic bag given to Jay Parker contained cocaine. Accordingly, the guns and plastic bags

were relevant evidence concerning an element of the charged offense.

■■ ■ The admission of the guns and plastic bags into evidence undoubtedly resulted in some prejudice to defendants. Relevant evidence need not be excluded solely because it prejudices the accused; however, the relevance and probative value of the evidence must be weighed against its prejudicial effect. (*People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1078.) The trial court's determination in this regard will not be reversed absent an abuse of discretion. (*Daniels*, 164 Ill. App. 3d at 1078.) In light of the strong probative value of the guns and plastic bags on the issue of defendant's knowledge, an element of the charged offense, the trial court's conclusion that the relevance and probative value of this evidence outweighed its prejudicial effect on defendant was not an abuse of discretion.

Defendant argues additionally that the guns should not have been admitted because there was undisputed evidence that his wife owned them, as indicated by the court's order after the trial directing their return to Mrs. DeCesare. According to Syndy Nugent's testimony, the three guns were found in the bedroom shared by defendant and his wife. Two of the guns were found on the top shelf of a closet which contained men's clothing; the other was found in a drawer containing men's underwear. This drawer also contained an ammunition clip with five projectiles.

■■ The fact that Mrs. DeCesare owned the weapons would hardly negate the possibility that they were kept in the residence because of her husband's involvement in drug trafficking, especially since they were found among his belongings. None of the cases we have cited concerning admissibility of guns as evidence of defendant's intent to distribute narcotics makes admission contingent upon proof that defendant actually owned the guns. Instead, in *United States v. Savinovich* (9th Cir. 1988), 845 F.2d 834, the court stated that "guns seized *from a defendant's residence* are admissible in a trial for possession of a controlled substance with intent to distribute." (Emphasis added.) (845 F.2d at 837.) The fact that Mrs. DeCesare owned the guns does not change our view that they were relevant, admissible evidence.

■■ Defendant also contends that Agent Nugent's testimony concerning the plastic bags should have been stricken by the trial court because she did not qualify as an expert, having seen similar bags used for the packaging of cocaine on only three occasions. This argument is without merit. A person will be allowed to testify as an expert if her experience and qualifications provide her knowledge which is not common to lay persons and where her testimony will assist the

trier of fact in reaching a conclusion. (*People v. Jordan* (1984), 103 Ill. 2d 192, 208.) It is within the discretion of the trial court to determine whether the witness has been properly qualified as an expert. *Jordan*, 103 Ill. 2d at 208.

Nugent testified that she had been an agent for LCMEG, a drug enforcement group, for 2½ years, and a police officer for the City of Zion for eight years. She had participated in 20 to 30 drug investigations as an undercover agent and conducted surveillance in over 100 others. In light of these qualifications, the trial court did not abuse its discretion by considering her an expert in the area of drug paraphernalia. Nugent's testimony that she had seen plastic bags such as those seized from defendant's residence used to package cocaine on only three other occasions would not diminish her expertise regarding drug paraphernalia in any manner. Instead, it might only affect the weight to be accorded the plastic bags by the jury as evidence that defendant knowingly delivered cocaine to Parker.

Defendant next contends he was entitled to a new trial, or to an evidentiary hearing on his motion for a new trial, as a result of the allegations made in the affidavit of Jay Parker. Defendant characterizes the averments made in the affidavit as newly discovered evidence.

A defendant should receive a new trial based upon newly discovered evidence only if the following requisites are met: (1) the evidence must be of such a conclusive character that it will probably change the result upon retrial; (2) the evidence must be material to the issue and not merely cumulative; and (3) the evidence must have been discovered after the trial and not have been discoverable before trial through the exercise of due diligence. (*People v. Johnson* (1986), 148 Ill. App. 3d 163, 171-72.) Such motions are not favored and will be subjected to the closest scrutiny. (*Johnson*, 148 Ill. App. 3d at 171.) The trial court denied the motion on the basis of defendant's failure to show the evidence was not discoverable before trial through the exercise of due diligence.

We agree with the trial court's conclusion. Defendant presented no facts in his motion for a new trial or during argument on the motion tending to establish that he exercised diligence in obtaining the so-called new evidence from Parker, who was disclosed as a potential witness more than four months before trial. There was no evidence that defendant's attorneys even attempted to interview Parker prior to trial. Defendant argues that he was improperly denied an evidentiary hearing concerning the allegations in Parker's affidavit. It was not error for the trial judge to refuse to hear evidence con-

cerning these factual allegations once it became apparent that defendant could not establish that the evidence was not discoverable before trial.

Furthermore, much of the so-called new evidence appears to be cumulative. Defendant cites the statements in the affidavit to the effect that the police told Parker he would be imprisoned for 15 years if he did not testify and he would be kept in jail until he testified as evidence that Parker's trial testimony resulted from coercion. At trial, however, the jury was made aware that Parker faced a Class X felony charge with a mandatory minimum prison term of six years and that this charge was reduced in exchange for his testimony. Thus, the jury knew that Parker was threatened with imprisonment if he did not testify.

Parker also testified at trial that as far as he knew, the agents remained in a grocery store parking lot five to seven miles away while he drove to defendant's home. The statements in his affidavit to the effect that the agents did not follow him to defendant's home cannot therefore be considered new evidence. While the statements in Parker's affidavit concerning the scope of the search of his person and car conducted by the agents do constitute new evidence, we have previously indicated that no showing was made that this evidence could not have been discovered prior to trial. The trial court properly denied defendant's motion for a new trial.

■■ Finally, defendant contends that the indictment should have been dismissed because of allegedly false testimony by Syndy Nugent before the grand jury. An indictment based upon perjured testimony may be dismissed if a due process violation is established with certainty. (*People v. Wolfe* (1983), 114 Ill. App. 3d 841, 845.) We agree with the trial court that defendant failed to establish a due process violation.

■■ ■ Nugent testified before the grand jury that, when Parker drove toward defendant's house on the day in question, the agents saw him park his car nearby and walk toward defendant's house. The evidence at trial indicates that the agents could not have seen either of these things from their surveillance position. Ordinarily, an indictment will not be dismissed because of false testimony before the grand jury unless all witnesses or testimony upon which the indictment is based are incompetent. (*People v. Schulz* (1987), 154 Ill. App. 3d 358, 367.) Nugent was the only grand jury witness. Her misstatements regarding whether she saw defendant park his car and walk toward defendant's home were minimized by her admission that she could not actually see Parker enter defendant's residence. Further-

more, she testified that Parker turned over a plastic bag which contained cocaine and told her that he received the bag from defendant. It would appear that the indictment resulted from this testimony. An indictment based largely or solely upon hearsay testimony is constitutionally permissible. (*Wolfe,* 114 Ill. App. 3d at 845.) Since there was ample evidence to support the indictment without Nugent's misstatements, we conclude there was no due process violation.

For the reasons stated herein, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.