No. 2--01--1131 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE         ) Appeal from the Circuit Court

OF ILLINOIS,  ) of Du Page County.

  )

Plaintiff-Appellee, ) 

) 

v. ) No. 01--CF--302

) 

JAMES C. HART,                  ) Honorable

) George J. Bakalis,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, James C. Hart, was convicted of retail theft in the circuit court of Du Page county (720 ILCS 5/16A--3(a) (West 2000)).  On appeal, defendant contends that the trial court committed reversible error both when it denied his motion to dismiss the indictment based on alleged perjured testimony presented to the grand jury and when it allowed testimony at trial regarding a previous theft that defendant was alleged to have committed at the same store.  Defendant also contends that the evidence was insufficient to sustain the trial court's 
judgment
.  We affirm.

The following is a brief summary of the evidence heard at trial.  On January 26, 2001, sometime after 11 a.m., defendant  entered the luggage department of a Neiman Marcus department store located at Oakbrook Shopping Center in Oakbrook, Illinois.  Marianne Etzkorn, a sales associate, observed defendant leaving the luggage department carrying a green Marshall Field's bag and a black leather "Tumi" briefcase that retailed for $395.  Both were in defendant's right hand, and they were arranged so that the Marshall Field's bag was on the outside, partially obscuring the briefcase.  Etzkorn had observed defendant enter the luggage department without the briefcase.  Evidence from a videotape taken by security cameras later corroborated that defendant took the briefcase from the luggage department.  Etzkorn notified the loss prevention department that defendant had left the luggage department with the unpurchased briefcase.

Jeff Weiland, a loss prevention investigator, and Maximilleo Toledo, Jr., a loss prevention officer, were on duty at the time defendant was in the store.  Prior to receiving Etzkorn's call, Weiland and Toledo had been observing defendant through a live feed from a series of surveillance cameras.  Weiland testified that, because he recognized defendant as a suspect from a previous shoplifting incident, he and Toledo paid special attention to him.  Through the video feed, Weiland observed defendant take the briefcase from the luggage department, pass the register at the luggage department, take the escalator to the second level, and continue to walk around the store.  After defendant got on the escalator, Toledo went outside the store to wait for him.   Weiland observed defendant pass several cash registers before ending up at a store exit near the accessories department.

The evidence showed that the accessories department had a circular "jewelry counter" adjacent to the door with two cash registers and items for sale encased in glass.  There was an area with a door mat between the jewelry counter and the exit and a small vestibule between the inside doors and the outside doors.  The jewelry counter was the last point where customers could pay for merchandise before exiting the store.  The videotape showed defendant circle the jewelry counter looking at the items for sale in the display case and then move toward the doors.  Defendant paused at the inside doors for several seconds.  At this time, Weiland informed Toledo via radio that defendant was about to leave the store.  Toledo moved toward the doors from a hiding place outside the store and opened the outside set of doors.  Toledo made eye contact with defendant, and defendant backed off from the inside doors.  Toledo walked past defendant into the store.  Defendant then moved back toward the jewelry counter.

Weiland, who had left the video surveillance room sometime during this period, identified himself to defendant as a Neiman Marcus loss prevention investigator.  According to Weiland, upon being accosted, defendant "blurted out" several times that he had never left the store.  Following his detention at the Neiman Marcus store, defendant was read his 
Miranda
 rights and placed under arrest by police.

The court also heard testimony regarding a previous incident that also involved defendant and had occurred at the same store 12 days earlier.  On January 14, 2002, Ron Harvey, a sales associate at the Neiman Marcus store, observed defendant remove a coat from a rack in the men's department.  Defendant also was carrying a second coat.  Defendant put the Neiman Marcus coat over his arm and put the second coat on top of that.   Jeffrey Bergandine, another sales associate, observed defendant with a "Neiman Marcus storm system trench coat" and a second coat, which he believed belonged to defendant, both draped over his arm.  Bergandine approached defendant and asked him whether he needed assistance.  Defendant replied that he was "just looking."  Bergandine believed defendant had not bought the Neiman Marcus coat because it was not in either a zipper bag or a Neiman Marcus opaque plastic bag.  Bergandine also observed a "sleeve label" on the coat.  Bergandine testified that such labels normally are removed when a coat is sold.

Bergandine phoned Weiland in the security office and informed him that a man with a Neiman Marcus trench coat draped over his arm had refused his assistance.  Weiland then began video surveillance of defendant.  Weiland observed defendant leave the store with the coat.  At no time did Weiland or anyone else who testified at trial observe defendant paying for the coat.   Weiland testified that he did not call the police or stop defendant from leaving the store because it was Neiman Marcus policy not to stop a suspected shoplifter unless a loss prevention officer actually observes the suspect removing the item in question from the rack and continuous surveillance is maintained.  Weiland notified the Neiman Marcus stores in Northbrook, Illinois, and on Michigan Avenue in Chicago to be on the lookout for a man attempting to return a trench coat.   Jovan Radjevic, a loss prevention officer at the Michigan Avenue store, received Weiland's call regarding the trench coat.  In response to the call, he alerted his sales associates that someone might be attempting to return a stolen trench coat.  Late that afternoon Radjevic received a phone call from a sales associate who informed him that a man was attempting to return a coat that fit the description given by Weiland.  When Radjevic began video surveillance he observed defendant talking to sales associates with a trench coat in his hand.  There was also a second man standing next to defendant.  Radjevic took a photograph of the two men that was introduced at trial.  

Evidence was heard that customers who return merchandise without proof of purchase are given the option of leaving the merchandise at the store while the sale of the merchandise is investigated.  If the investigation determines that the merchandise was validly sold, the customer subsequently receives a check in the mail.  Alternatively, customers may retain the merchandise and forego a refund.  Defendant chose to leave the trench coat at the store in order to receive a refund.  The coat he returned matched the description of the coat that was seen in his possession earlier that day at the Oak Brook store.

Jamie Weber, loss prevention manager at the Oak Brook Neiman Marcus store, investigated defendant's claim that he had bought the coat.  Weber determined that the coat was a Neiman Marcus product by looking at the make of the coat and the price tag.  The coat retailed for $1,195.  According to Weber, the coat had a "SKU" number that was unique to its style, size, and color.  Neiman Marcus uses a computer system to manage its inventory.  The system keeps track of how many items of a particular type are on hand in a store.  Specifically, when an item is sold, the system recognizes the SKU number for that item and subtracts it from the store's inventory.  Among other things, this allows Neiman Marcus to audit its physical inventory to make sure that it is not missing items from the store.  Weber twice conducted such an audit with respect to the particular type of trench coat that defendant returned to  the Michigan Avenue store and each time determined that the physical inventory was one short of what it should have been based on sales records.

Following a bench trial, defendant was found guilty of retail theft for the theft of the briefcase.  On appeal defendant contends that his conviction must be reversed because (1) the trial court erred in failing to grant his motion to dismiss the indictment based on alleged perjured testimony presented to the grand jury; (2) the trial court erred in denying his motion to exclude evidence of the alleged theft of the trench coat; and (3) no rational trier of fact could have found him guilty beyond a reasonable doubt based on the evidence.  We examine each argument in turn.

Defendant first argues that he was denied due process because certain false testimony was presented to the grand jury.  Before the grand jury, Officer Jeff Arendt testified as follows:

"Q.  Good afternoon, officer.  Would you please introduce yourself and spell your last name?

A.  Officer Jeff Arendt.  A-r-e-n-d-t.

Q.  And are you currently employed with the Oak Brook Police Department?

A.  Yes.

Q.  Directing your attention to January 26, 2001, were you so employed and on duty on that date?

A.  Yes.

Q.  And were you called to a report of a retail theft that had taken place at Neiman Marcus in Oak Brook Shopping Center in Oak Brook, DuPage County, Illinois?

A.  Yes, I was.

Q.  And when you arrived at that location, did you have an opportunity to speak to a loss prevention officer at the Neiman Marcus by the name of loss prevention officer Wieland [
sic
], W-i-e-l-a-n-d [
sic
]?

A.  Yes.

Q.  And did he advise you at the time that he had observed over closed-caption [
sic
] television, he observed somebody select a briefcase off of a display shelf in the stationery department and then carry it away next to his body?

A.  Yes.

Q.  And that on the other side of that briefcase he carried a Marshall Field's shopping bag with an empty box in that--in that bag?

A.  Correct.

Q.  Did he then tell you that he observed over this closed-caption [
sic
] television this offender then exit the stationery department and exit the store through the first four [
sic
] north--doors without paying for that briefcase?

A.  Yes.

Q.  And did he confirm to you that the value of this briefcase was in excess of $150?

A.  Yes, he did.

Q.  This briefcase that was taken, of course, was offered for sale at the Neiman Marcus, which is a retail mercantile establishment; is that correct?

A.  Yes.

Q.  Everything you testified to here today, did that occur within DuPage County, State of Illinois?

A.  Yes.

Q.  And also did you have the chance to observe this video?

A.  Yes.

Q.  And did you observe substantially what you testified to here today?

A.  Yes.

Q.  And the offender, did you later identify as being James Christopher Hart?

A.  Yes."

Officer Arendt's testimony was the only evidence presented to the grand jury.  
Defendant made a pretrial motion to dismiss, alleging that 
perjured 
testimony was presented to the grand jury.  The trial court denied the motion, 
although it found that the testimony was in part inaccurate.
  We agree that the testimony was in part inaccurate.  A videotape that was played during the hearing on the motion to dismiss and introduced into evidence at trial showed that defendant did not leave the Neiman Marcus store but, rather, stopped at the door.  Therefore, at the very least, Officer Arendt's testimony that the videotape corroborated Weiland's statement that defendant left the store was inaccurate.  Read broadly, this fact also casts some doubt on Officer Arendt's testimony regarding Weiland's statement that defendant left the store and Arendt's testimony that he viewed the videotape.  Nonetheless, it does not follow that defendant has been denied due process.

Generally, a defendant may not challenge the adequacy and sufficiency of the evidence underlying an indictment.  
People v. Torres
, 245 Ill. App. 3d 297, 299 (1993).  Otherwise, "before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury."  
Costello v. United States
, 350 U.S. 359, 363, 100 L. Ed. 397, 402, 76 S. Ct. 406, 408 (1956).  For this reason, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits."  
Costello
, 350 U.S. at 363, 100 L. Ed. at 402-03, 76 S. Ct. at 409.  Our supreme court has explained the rationale behind this rule: 

"The delay is great when an accused can assail an indictment on this ground and cause the trial court to review all the evidence presented to the grand jury ***.  Such procedure adds nothing to the assurance of a fair trial to which the accused is entitled.  We are of the opinion that the trial court should not inquire into the adequacy and competency of the evidence before the grand jury."  
People v. Jones
, 19 Ill. 2d 37, 43 (1960).

Defendant's argument is a challenge to the adequacy and competency of the evidence before the grand jury.  Defendant, however, attempts to invoke an exception to the general rule that allows dismissal, at least by a trial court, where a defendant's due process rights have been violated.  
People v. Wolfe
, 114 Ill. App. 3d 841, 844-45 (1983).   Defendant correctly points out that "[a]n indictment based upon perjured testimony may be dismissed if a due process violation is established with certainty."  
People v. DeCesare
, 190 Ill. App. 3d 934, 944 (1989).  For the reasons that follow, we conclude that no violation of due process has been established with certainty.

In the context of a grand jury proceeding, a denial of due process has been held to occur in two circumstances.  The first is where a defendant's right to a fair trial is prejudiced.  
People v. J.H.
, 136 Ill. 2d 1, 12 (1990).  Defendant does not contend that he has been prejudiced at trial.  The second is where the State's conduct before the grand jury "undermines the integrity of the judicial process." 
 
J.H.
, 136 Ill. 2d at 12-13.  In Illinois, this rule has been applied only to knowing prosecutorial misconduct that prejudices the defendant in the grand jury proceeding.  As the supreme court put it, "[s]ome cases suggest [that undermining the integrity of the judicial process] 
may
 occur where a prosecutor deliberately or intentionally misleads the grand jury to the prejudice of the defendant."  (Emphasis in original.) 
J.H.
, 136 Ill. 2d at 13.  
People v. Barton
, 190 Ill. App. 3d 701 (1989), for example, held that there was a violation of due process where a State's Attorney indicted a political enemy the day after the State's Attorney had lost his reelection campaign and deliberately and intentionally misled the grand jury by having a prosecutor read a transcript of previous testimony by the accused that was edited in such a way that it completely altered the testimony's meaning.  In affirming the trial judge's pretrial dismissal of the indictment, the court emphasized that the deception by the prosecutor was neither accident nor mistake.  
Barton
, 190 Ill. App. 3d at 709.  Conversely, we know of no case that has held a prosecutor's unintentional presentation of inaccurate evidence to violate due process.  Moreover, defendant does not argue that the prosecutor intentionally misled the grand jury.

Though no Illinois case has held otherwise, we do not assume that deliberate deception on the part of a prosecutor, as opposed to police officers or other State actors, is the only means by which the State's conduct before the grand jury may "undermine[] the integrity of the judicial process" (
J.H.
, 136 Ill. 2d at 12-13).
  In our view, however, there must be, at the very least, intent on the part of some State actor to materially mislead the grand jury in order to give rise to a violation of due process.  We do not find that such intent has been established with certainty in the instant case.

Courts are to "proceed with restraint and ascertain preindictment denial of due process only with certainty."  
People v. Lawson
, 67 Ill. 2d 449, 457 (1977).  An indictment, therefore, should be dismissed only upon an "unequivocally clear denial of due process."  
Lawson
, 67 Ill. 2d at 456.
 

Defendant argues that the inaccurate statements by Officer Arendt that were presented to the grand jury could not have been made in good faith because of the magnitude of the error.  There is no evidence, however, that Officer Arendt's statements were made with the intention to mislead.  Significantly, neither the State, in its prosecution of defendant, nor Officer Arendt, personally, stood to gain from the inaccurate testimony.  First, as we determine that there was enough evidence to convict, there was clearly enough evidence to indict defendant even if Officer Arendt had correctly described the content of the videotape.  See 
United States v. Mechanik
, 475 U.S. 66, 67, 89 L. Ed. 2d 50, 54, 106 S. Ct. 938, 940 (1986) ("We believe that the petit jury's verdict of guilty beyond a reasonable doubt demonstrates 
a fortiori
 that there was probable cause to charge the defendants with the offenses for which they were convicted").  Second, if Officer Arendt was aware of his misstatements, he would have known to a substantial certainty that his misstatements would be discovered as soon as the defense received the videotape.  It cannot be concluded that Officer Arendt's statements were made with intent to materially mislead the grand jury.  Therefore, we find that there has been no clear violation of defendant's due process rights.

Defendant next contends that the trial court erred by allowing evidence of defendant's prior theft of the trench coat for the purpose of establishing defendant's intent.  While evidence of crimes for which a defendant is not on trial is inadmissible if relevant merely to establish a defendant's propensity to commit crime, such evidence is admissible if relevant to prove 
intent.  
People v. Thingvold
, 145 Ill. 2d 441, 452 (1991).  A prior offense  may be relevant to prove intent if it has "mere general areas of similarity."  
People v. McKibbins
, 96 Ill. 2d 176, 185-86 (1983).  The trial court's ruling as to the admissibility of such evidence will not be reversed absent a clear showing of abuse of discretion.  
Thingvold
, 145 Ill. 2d at 452-53.

Defendant argues that the theft of the trench coat was not adequately proven.  It is true that, before evidence of a prior crime may be admitted, the State must first show that a crime took place and that the defendant committed it or participated in its commission.  
Thingvold
, 145 Ill. 2d at 455.  However, "[p]roof that the defendant committed the crime, or participated in its commission need not be beyond a reasonable doubt [citations], but such proof must be more than a mere suspicion [citations]."  
Thingvold
, 145 Ill. 2d at 456.

 Much evidence was heard at trial with respect to the theft of the trench coat.  Defendant was seen removing the coat from the rack at the Neiman Marcus store and putting it underneath another coat on his arm.  Defendant was videotaped wandering around the store and then leaving with the coat without paying for it.  Defendant was photographed attempting to return an identical coat only hours later at a different Neiman Marcus store.  Finally, when defendant attempted to return the coat at the Michigan Avenue store, inventory records revealed that a coat matching the precise description of the one returned by defendant was missing from the Oak Brook store.  Based on this, the State's proof that defendant stole the trench coat went well beyond a mere suspicion.

Defendant argues, alternatively, that the evidence of the prior theft should not have been admitted because its prejudicial effect outweighed its probative value.  When evidence of prior crimes is offered to show intent, the trial court must weigh the relevance of the evidence to the issue of intent against the prejudicial effect the introduction of such evidence may have upon the defendant.  
Thingvold
, 145 Ill. 2d at 452
.

Defendant first contends that, because of the volume of evidence that was heard regarding the theft of the trench coat, "the issue of [his] guilt or innocence became obscured by the other[-]crimes evidence."  Defendant appeals from a bench trial.  When other-crimes evidence is introduced for a limited purpose in a bench trial, it is presumed that the trial judge considered it only for that purpose.  
People v. Deenadayalu
, 331 Ill. App. 3d 442, 450 (2002).  Here the trial court specifically stated that the evidence was being allowed to show intent and was not being used to show propensity to commit crime.  Defendant has offered nothing to rebut the presumption that the trial judge considered this evidence only for the proper purpose of determining intent.  Consequently, we cannot say that the trial judge used the other-crimes evidence for an improper purpose.

 Defendant also argues that the probative value of the prior theft was negligible because the videotape was sufficient evidence of what occurred on the day of the present crime.
  Defendant states in this regard, "[T]he admission of evidence of the prior incident was totally unnecessary since Hart's actions on the 26th were recorded on videotape.  This is the best evidence of the incident and it speaks for itself."  Defendant, however, argues elsewhere that the element of intent was not proved.  Though the trial judge might have been able to infer intent from the actions recorded on the videotape, intent was not, literally speaking, recorded on the videotape.  Moreover, because of its similarity in substance and proximity in time, the theft of the trench coat was highly probative of defendant's intent in the charged offense.  See 
People v. Illgen
, 145 Ill. 2d 353, 370-72 (1991).  We cannot say that the trial court abused its discretion in admitting the evidence.

Finally, defendant contends that the evidence was insufficient to support his conviction.  Specifically, he asserts that the intent element of retail theft was not proved because defendant never exited the Neiman Marcus store with the briefcase.  Defendant, however, cites no authority for the premise that a suspect must actually exit a store in order for intent to be proved.  Rather, our review of the law on the subject leads us to the opposite conclusion.  

At the outset, we note that it is not the province of an appellate court to retry the defendant when considering a challenge to a criminal conviction based upon the sufficiency of the evidence.  
People v. Smith
, 185 Ill. 2d 532, 541 (1999).  Rather, our task is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.  
Smith
, 185 Ill. 2d at 541.

Defendant's argument that the evidence was insufficient to support a conviction for retail theft because he did not actually exit the Neiman Marcus store with the briefcase is without merit.  Though certainly relevant to intent, exiting the store has never been a 
sine qua non
 for establishing intent in a retail theft case.  In certain instances Illinois law actually creates a presumption of intent even where a defendant has not left the store.  Specifically, if any person conceals among his belongings unpurchased merchandise held for sale in a retail mercantile establishment and "removes that merchandise beyond the last known station for receiving payments for that merchandise," he will be presumed to have the requisite intent for retail theft.  720 ILCS 5/16A--4 (West 2000).  While we offer no opinion as to whether this presumption applies to defendant, the fact that such a presumption exists shows conclusively that intent may be proved absent a suspect's actually leaving the store where, as here, he removes the merchandise beyond the last known station for receiving payments.  After viewing the evidence in the light most favorable to the prosecution, we conclude that the trial court could have found all the elements of retail theft proved beyond a reasonable doubt.

For the foregoing reasons, we affirm judgment of the circuit court of Du Page County.

Affirmed.

GROMETER, J., concurs.

JUSTICE McLAREN, specially concurring:

I believe that defendant's arguments regarding the denial of the motion to dismiss and insufficient proof of guilt beyond a reasonable doubt lack merit as a matter of law.  Therefore, I do not believe that it is necessary to either mischaracterize defendant's claims or opine, as does the majority, 
"that there must be, at the very least, intent on the part of some State actor to materially mislead the grand jury in order to give rise to a violation of due process."  
Slip op. at 11.

Even though the trial court did not find that the testimony was false or perjured, defendant has failed to establish that the allegedly perjured testimony is material to establishing probable cause as well as proof of a necessary element of retail theft beyond a reasonable doubt.

Defendant claims that the State must prove that he left the store in order to prove that he committed the crime of retail theft.  Likewise, he claims that the State must establish the same fact before the grand jury. Defendant does not cite to any authority for these propositions other than "store policy."  Failure to cite relevant authority is a violation of Supreme Court Rule 341 and results in waiver of the issue on appeal.  188 Ill. 2d R. 341(e)(7); 
Hoff v. Mayer, Brown & Platt
, 331 Ill. App. 3d 732, 741 (2002).  Waiver aside, the State cites to several cases not cited by the majority opinion that clearly establish that such an element is not required to prove retail theft.  See 
People v. Caplinger
, 162 Ill. App. 3d 74 (1987); 
People v. Connell
, 91 Ill. App. 3d 326 (1980)
;
 
People v. Mays
, 62 Ill. App. 3d 17 (1978);
  City of Joliet v. Gregorec
, 12 Ill. App. 3d 998 (1973).  Contrary to defendant's uncited claims, the law is clear that to establish retail theft
 the State is not required to prove that defendant left the premises of the theft site.  Therefore, the allegedly false and perjured testimony was irrelevant and immaterial to establishing probable cause before the grand jury and proof beyond a reasonable doubt before the trial court.

The majority's analysis fails to address waiver in order to go beyond the issues raised on appeal.  The majority skews the argument of defendant when it states: 

"
Conversely, we know of no case that has held a prosecutor's unintentional presentation of 
inaccurate
 
evidence to violate due process.  Moreover, defendant does not argue that the prosecutor intentionally misled the grand jury
."  (Emphasis added.)  Slip op. at 11.

The majority raises a strawman and proceeds to knock him down in an attempt to misdirect the reader from the simple, basic, and correct argument raised by defendant that an indictment may be dismissed if it is based upon false or perjured testimony.  The majority opinion also goes far beyond the facts in the case to opine that there must be deception on the part of a State "actor."  In addition to this being 
obiter dicta
, it is incorrect to require deception on the part of a State actor.  The case cited by defendant and its precursors suggest the opposite conclusion.  See 
People v. DeCesare
, 190 Ill. App. 3d 934 (1989); 
People v. Wolfe
, 114 Ill. App. 3d 841 (1983); 
People v. Rivera
, 72 Ill. App. 3d 1027 (1979).  In 
People v. Hunter
, 298 Ill. App. 3d 126 (1998), an indictment was quashed without any finding of deception on the part of a State "actor." The court said: 

"In addition to the public policy of protecting the public against the overreaching and oppression of the State, our determination provides the State with a strong deterrent against future uses of perjured testimony.  Honesty and integrity are essential to the performance of the functions of the police and prosecutor in our criminal justice system and the maintenance of our freedoms.  '[A]s the guardians of our laws, police officers are expected to act with integrity, honesty, and trustworthiness.' [Citation.]  This admonition applies with equal force to the prosecution.  If the police and prosecution know that perjured testimony will lead to the dismissal with prejudice of their cases, they will be careful to use only truthful testimony.  Additionally, we recognize the ramifications of our holding and emphasize that this case involves wilful perjury discovered and brought before the court by defendants.  We cannot say that, had the false testimony been made by accident, mistake, or inadvertency, or had the State discovered the perjured testimony and brought it to the attention of the court in order to correct the violation of defendants' rights, our result would be the same.  We merely hold that, 
where defendants discovered the perjured testimony and the court dismissed the indictment due to the due process violation arising from the State's use of perjured testimony, the State may not seek a new indictment
."  (Emphasis added.)  
Hunter
, 298 Ill. App. 3d at 131-32. 

Hunter
 did not require deception on the part of a State actor; it required only
 that the State use the perjured testimony.  It is inappropriate for this majority to fail to cite, let alone fail to follow, prior precedent.  It is also inappropriate to do so when the issues are not justiciable and the statements are 
obiter dicta
.

I conclude by voicing my opinion that this disposition is not precedential and therefore should not be published.  166 Ill. 2d  R. 23.  The "law" contained in the majority opinion appears to be precedential only because the majority fails to cite to prior authority brought to its attention by the State and fails to recognize prior precedent cited by defendant regarding perjured testimony.

   For these reasons, I specially concur.