# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Reimer*, 2012 IL App (1st) 101253

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT REIMER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-1253 |
| Opinion filed | March 30, 2012 |
| Rehearing denied | May 3, 2012 |
| Modified Opinion filed | May 8, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for home repair fraud, the State violated defendant's due process rights by presenting two incorrect statements of law with regard to home repair fraud before the grand jury, namely, that the element of intent could be presumed and that defendant's intent at the time of the agreement with the victim was not an element of the offense, and those misstatements resulted in actual and substantial prejudice to defendant; therefore, the cause was remanded with directions to dismiss the indictment without prejudice, since there were no concerns about new deception or perjured testimony where the State would simply present evidence satisfying the element of defendant's intent at the time of the agreement. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-20250; the Hon. Marcus R. Salone, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Philip D. Payne, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Ashley Romito, Mary Needham, and Sebastian Soto, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Connors concurred in the judgment and opinion.
Presiding Justice Quinn specially concurred, with opinion.

# OPINION

¶ 1     Defendant, Robert Reimer, was charged with one count of home repair fraud pursuant to section 3(a)(1) of the Home Repair Fraud Act (815 ILCS 515/3(a)(1) (West 2008)). A jury found defendant guilty. The circuit court sentenced defendant to 30 months' probation, to payment of restitution to the victim, and to performance of 288 hours of community service. At issue is whether the State, in presenting the case before the grand jury, violated defendant's due process rights. On March 30, 2012, we filed an opinion after oral argument dismissing the indictment without prejudice, reversing the judgment of the circuit court and remanding the case for further proceedings. Defendant filed a petition for rehearing on April 20, 2012 asserting that the evidence presented at trial was insufficient to support a conviction.[1] Upon denial of defendant's petition for rehearing, we issue this modified opinion.

¶ 2                               JURISDICTION
¶ 3     The circuit court sentenced defendant on April 14, 2010. Defendant timely filed his notice of appeal on April 16, 2010. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

---

[1]Defendant also raised the following issues on appeal: whether the circuit court abused its discretion when it rejected defendant's supplemental jury instructions; and whether the evidence in this case was closely balanced such that the circuit court's violation of Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) amounts to plain error. However, due to our disposition of this appeal, we do not need to address those arguments.

¶ 4                                  BACKGROUND

¶ 5        Defendant was charged by indictment with one count of home repair fraud pursuant to section 3(a)(1) of the Home Repair Fraud Act (Act) (815 ILCS 515/3(a)(1) (West 2008)). The indictment, in relevant part, stated defendant:

> "KNOWINGLY ENTERED INTO A WRITTEN AGREEMENT OR CONTRACT, WHEN THE AMOUNT OF THE AGREEMENT OR CONTRACT WAS MORE THAN $1,000.00, WITH RITA AVILA FOR HOME REPAIR AND [DEFENDANT] KNOWINGLY PROMISED PERFORMANCE WHICH HE DID NOT INTEN[D] TO PERFORM OR HE KNEW WOULD NOT BE PERFORMED."

¶ 6        Before the grand jury, Detective Sandra Bryant of the Chicago police department testified she was assigned to investigate a home repair fraud involving defendant as the offender and Rita Avila as the victim. Detective Bryant testified that through her investigation, she learned that Avila entered into a contract with defendant to perform repairs on her home on June 11, 2007. On that same day Avila paid defendant $2,000. Defendant started work and Avila paid him a total of $6,000. The last check that Avila gave to defendant was on or about July 16, 2007. After July 16, 2007, defendant did not complete any more work on Avila's home. Detective Bryant testified that at the time Avila and defendant came to an agreement, Avila believed she knew where defendant's office was. Avila had defendant's cell phone number, which she used to contact defendant.

¶ 7        Detective Bryant testified that when Avila went to the address where she believed defendant's office was located, she found a vacant lot. When Avila tried to contact defendant through his cell phone, it was disconnected. Defendant never provided Avila with any new contact information. Detective Bryant stated that defendant did not perform $6,000 worth of work on Avila's home. Specifically, he was supposed to put in new kitchen cabinets, which defendant never ordered. Defendant admitted to Detective Bryant that he started the work, but did not finish it, claiming that he ran out of money. He further admitted he never gave Avila a new way to contact him.

¶ 8        In response to questions from the grand jury, Detective Bryant testified that the defendant was supposed to "tear out walls and existing cabinets in the kitchen and bathroom, replace cabinets and walls, paint, tile floors, and plumbing work." Detective Bryant testified that defendant "did demolition work" and "put up some walls." Detective Bryant testified further that Avila found defendant on Contractors.com as BRB Construction. At one point during Detective Bryant's testimony, the grand jury asked the assistant State's Attorney, "What makes this a felony case versus a civil case to be taken before a civil court?" In response, the following exchange occurred:

> "Q. [Assistant State's Attorney]: Detective, I'm going to ask you a series of questions to answer the Foreman's question.
>
> Is it true that according to the home repair fraud statute that once two parties come to an agreement for home repair that if it is shown that the defendant has no intention to complete the work agreed upon, that it is a felony?
>
> A. Yes.

Q. And does the statute also specifically show some examples of how intent to not finish can be inferred?

A. Yes.

Q. And one of those specific examples is if the defendant changes his business address and does not by writing notify the victim of that change of the address at the time of the change?

A. Yes.

Q. Is intent to not finish the project also shown by the fact that the defendant never made contact with the victim to make any other arrangements?

A. Yes.

Q. And is it also shown by the fact that the victim had no way either in person or by phone or by letter, for that matter, since the address was not existent to contact the contractor?

A. Yes."

¶ 9     After testifying that defendant "stated he ran out of money" as the reason for not completing the work, the following exchange occurred between the grand jury, the assistant State's Attorney, and Detective Bryant:

"THE FOREPERSON: Did he admit that he intended not to complete the project or that he entered into this project with the intention of taking her money and not finishing? The question is: Did he intend not to finish this project on the onset of accepting the job?

Q. [Assistant State's Attorney]: Detective, is it correct that that is not an element of the offense?

A. [Detective Bryant]: That's correct."

¶ 10    After deliberating, the grand jury delivered a true bill.[2]

¶ 11    Prior to trial, defendant filed a motion to dismiss his indictment based on due process violations. In his motion, defendant argued that "the State's Attorney and the testifying detective misled the grand jury by grossly misstating the law for home repair fraud."[3] Specifically, defendant argued that the State misled the grand jury by stating that intent not to finish repairs can be inferred in a variety of ways even though that subsection of the Home Repair Fraud Act had been severed by our supreme court. See *People v. Watts*, 181 Ill. 2d 133 (1998). Defendant also pointed to the section of the grand jury transcript where

---

[2]See section 17 of the Jury Act, which states in relevant part: "it shall be the duty of the court to appoint a foreman *** whose duty it shall be, when the grand jury, or any nine of them, find a bill of indictment to be supported by good and sufficient evidence, to indorse thereon 'A true bill.' " 705 ILCS 305/17 (West 2008).

[3]Defendant also alleged in his motion to dismiss the indictment that the State erroneously implied to the grand jury that he had prior convictions. Defendant does not raise this contention on appeal.

Detective Bryant, in response to the assistant State's Attorney's question, stated that defendant's intent not to finish the job at the onset of the job was not an element of the offense. Because the State did not present evidence of defendant's intent not to finish the job at the onset of the contract, defendant argued that the State did not meet its burden of showing intent. Defendant maintained that the State's actions before the grand jury resulted in actual and substantial prejudice to him and the indictment against him should be dismissed. Defendant also requested that the indictment be dismissed with prejudice because he contended that the State would have to present contradictory evidence in order to reindict him. Defendant attached to his motion as exhibits the transcript of the grand jury proceedings, a copy of section 3 of the Home Repair Fraud Act (815 ILCS 515/3 (West 2008)), and his criminal history report.

¶ 12 In response, the State argued that defendant never showed "how his due process rights were violated or how he was actually prejudiced." The State maintained that it presented evidence showing that defendant did not intend to finish the project and that he did not finish the project. Specifically, the State argued that "the intent not to complete the contract was evident by the defendant's actions. The exact timing of when the defendant decided not to complete the contract was an issue for trial and was not required for a finding of probable cause." The State also argued that it did not commit prosecutorial misconduct because there was no evidence that the assistant State's Attorney intentionally misled the grand jury.

¶ 13 The circuit court denied defendant's motion. In making its ruling, the court stated that it did not "believe that there was deception sufficient to undermine the determination of probable cause." The court commented further that "I think that statement attributed to the defendant wherein the defendant says, I ran out of money. I just wasn't going to do it. He certainly, I think, exerted control over this young lady's money with the intent to deprive her."

¶ 14 After a trial, the jury found defendant guilty. Defendant filed a motion for a new trial raising 19 points of error. Relevant to this appeal, defendant argued that the circuit court erred in dismissing his motion to dismiss the indictment. Defendant was sentenced to 30 months' probation, to payment of restitution to the victim, and to performance of 288 hours of community service.

¶ 15 Defendant timely appealed.

¶ 16                                    ANALYSIS

¶ 17 We will first look at section 3 of the Home Repair Fraud Act (815 ILCS 515/3(a)(1) (West 2008)), before addressing whether the State, in presenting the case before the grand jury, violated defendant's right to due process.

¶ 18                    Section 3 of the Home Repair Fraud Act

¶ 19 The purpose of the Home Repair Fraud Act "is to prohibit and prevent the knowing use of fraud and deceptive practices to induce an unwitting homeowner to enter into a contract

-5-

for home repairs." *People v. Thompson*, 275 Ill. App. 3d 725, 732 (1995). Section 3 of the Home Repair Fraud Act, in relevant part, states:

"(a) A person commits the offense of home repair fraud when he knowingly enters into an agreement or contract, written or oral, with a person for home repair, and he knowingly:

(1) Misrepresents a material fact relating to the terms of the contract or agreement or the preexisting or existing condition of any portion of the property involved, or creates or confirms another's impression which is false and which he does not believe to be true, or promises performance which he does not intend to perform or knows will not be performed; ***

* * *

(c) For purposes of subsection (a), paragraph (1), it shall be a rebuttable presumption of intent or knowledge that a person promises performance which he does not intend to perform and knows will not be performed when, after no performance or no substantial performance of a contract or agreement for home repair, he fails or refuses to return payments made by the victim and he:

(1) fails to acknowledge or respond to a written demand for commencement or completion of home repair within 10 days after such demand is mailed or presented to him by the victim or by the victim's legal representative or by a law enforcement or consumer agency acting on behalf of the victim; or

(2) fails to notify the victim in writing of a change of business name or address prior to the completion of the home repair; or

(3) makes false statements or representations to the victim to excuse his non-performance or non-substantial performance; or

(4) uses deception to obtain the victim's consent to modification of the terms of the original contract or agreement; or

(5) fails to employ qualified personnel necessary to perform the home repair; or

(6) fails to order or purchase the basic materials required for performance of the home repair; or

(7) fails to comply with municipal, county, State or federal regulations or codes relating to the performance of home repair.

Intent and knowledge shall be determined by an evaluation of all circumstances surrounding a transaction and the determination shall not be limited to the time of contract or agreement.

Substantial performance shall not include work performed in a manner of little or no value or work that fails to comply with the appropriate municipal, county, State, or federal regulations or codes." 815 ILCS 515/3(a)(1), (c) (West 2008)

¶ 20    In February of 1998, our supreme court issued its decision in *People v. Watts*, 181 Ill. 2d 133 (1998). *Watts* addressed whether subsection (c) under section 3 of the Home Repair Fraud Act violated the "the constitutional limits on the State's right to use presumptions in

-6-

proving defendant's guilt." *Watts*, 181 Ill. 2d at 141. The defendant in *Watts* was charged with one count of theft and, like the defendant in the case at bar, one count of home repair fraud under section 3(a)(1) of the Act. *Id.* at 135-36. The circuit court found defendant not guilty of the theft count because "the State failed to prove that defendant had not intended to perform the construction services at the time that he entered into the contract." *Id.* at 137-38. As for the home repair fraud count, the supreme court noted that because there was no dispute regarding the existence of a contract between the parties, "the only question at trial was whether defendant had intended to perform the promised work at the time he entered into the contract." *Id.* at 138. The trial court found that the State failed to prove defendant intended not to perform his obligations under the contract, but did prove "the factors necessary to raise a presumption of intent" under subsection (c) of the Act which "triggered" the "statutory presumption of intent." *Id.* at 138-39. After finding defendant failed to rebut the presumption of intent, the trial court found defendant guilty of home repair fraud. *Id.* at 139.

¶ 21    In analyzing the issue, our supreme court first noted that "in the area of criminal law, mandatory rebuttable presumptions which shift the burden of production to the defendant are unconstitutional" because they violate the due process clause of both the United States Constitution and the Illinois Constitution. *Id.* at 147. The supreme court then held that the "presumption contained in subsection (c) is mandatory and, as such, is unconstitutional." *Id.* at 149. After holding that subsection (c) was unconstitutional, the court decided that subsection (c) should be severed from the rest of the statute. *Id.* at 150-51. The supreme court noted that "while we strike subsection (c) of the statute, the remainder of the statute remains intact and valid." *Id.* at 151. We note that in making our determination in this case, we must consider our supreme court's interpretation of the Home Repair Fraud Act in *Watts* as part of the statute because the legislature has not yet amended section 3(a)(1) of the Home Repair Fraud Act. See *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 343 (2008) ("Our interpretation is considered part of the statute itself until the legislature amends it contrary to that interpretation.").

¶ 22    The supreme court also ruled that the defendant in *Watts* could not be retried on the same home repair fraud count due to collateral estoppel. *Watts*, 181 Ill. 2d at 152. The court stated, "the circuit court found that the State had not met its burden of proving that the defendant did not intend to perform when he entered into the contract and, as a result, acquitted defendant on the theft count." *Id.* The court held that this issue cannot be relitigated because "a court in a retrial under the Act would be left to determine the issue of defendant's intent precisely as it was decided under the theft count at the original trial." *Id.* Therefore, because the circuit court had already acquitted the defendant of the theft count because the State did not prove defendant had the requisite intent when entering into the contract, the issue had already been decided in defendant's favor.[4] *Id.*

---

[4]Justice Miller specially concurred, stating that he agreed with the majority's analysis regarding the federal constitutional issue. *Watts*, 181 Ill. 2d at 152 (Miller, J., concurring). However, he believed that, "Because the case is decided on federal constitutional grounds, there is no need for

-7-

¶ 24    Defendant argues that the circuit court erred in denying his motion to dismiss his indictment. He contends the State misled the grand jury, which he alleges violated his due process rights and resulted in actual and substantial prejudice. Defendant argues that the State misled the grand jury by misinforming it in regard to the intent element of the Home Repair Fraud Act, by specifically relying on subsection (c) of section 3 of the Home Repair Fraud Act, which was severed in *Watts*. *Id.* at 149. Defendant maintains that he was prejudiced because absent the misleading testimony, he believes the grand jury would not have returned a true bill against him.

¶ 25    In response, the State first contends defendant affirmatively waived his contention that the State misled the grand jury. The State points to comments by defense counsel during argument before the circuit court on defendant's motion to dismiss the indictment which the State maintains shows that defendant conceded that the State did not act intentionally. The State also argues that the record establishes that the State did not deliberately mislead the grand jurors. In the alternative, the State argues that defendant cannot show that he suffered actual and substantial prejudice. The State contends that there was ample evidence to support the indictment and defendant's eventual conviction.

¶ 26    In proceedings before the grand jury, the State's Attorney acts as an advisor and presents both the law and the proposed charges against the defendant. *People v. DiVincenzo*, 183 Ill. 2d 239, 254 (1998). The grand jury is allowed "the broadest possible scope consistent with constitutional limitations" when conducting its investigations. *People v. Fassler*, 153 Ill. 2d 49, 59 (1992). Our supreme court has stated, and defendant readily admits in his opening brief, that "[c]hallenges to grand jury proceedings are limited." *DiVincenzo*, 183 Ill. 2d at 255. Typically, "a defendant may not challenge the validity of an indictment returned by a legally constituted grand jury" nor may a defendant "seek to challenge the sufficiency of the evidence considered by a grand jury if some evidence was presented." *Id.* However, indictments resulting from prosecutorial misconduct may be challenged by a defendant. *Id.*; see also *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010) ("A trial court may dismiss an indictment if the defendant establishes that he has suffered a prejudicial denial of due process.").

¶ 27    When ruling on a motion to dismiss an indictment, courts typically consider only the transcript of the proceedings before the grand jury. *DiVincenzo*, 183 Ill. 2d at 255. In doing so, we will review whether defendant suffered a prejudicial denial of due process *de novo*. *People v. Mattis*, 367 Ill. App. 3d 432, 435-36 (2006) ("because the essential facts concerning what happened at the grand jury proceedings are undisputed, we review *de novo* whether defendant suffered a prejudicial denial of due process that could warrant dismissal").

¶ 28    Prosecutorial misconduct before the grand jury does not warrant dismissal of the

---

us to consider here whether the Illinois Constitution independently requires the same result." *Id.* Justice Miller, therefore, did "not join the brief discussion in the majority opinion regarding a state constitutional basis" for the decision. *Id.*

indictment unless defendant "can show that such misconduct results in actual and substantial prejudice to him." *Fassler*, 153 Ill. 2d at 58. Our supreme court, in *DiVincenzo*, explained:

"To warrant dismissal of the indictment, however, a defendant must ordinarily show that *** any prosecutorial misconduct affected the grand jury's deliberations. [Citation.] Prosecutorial misconduct must rise to the level of a deprivation of due process or a miscarriage of justice. [Citations.] The due process rights of a defendant may be violated if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence. [Citations.] An indictment may also be dismissed where the prosecutor has applied undue pressure or coercion so that the indictment is, in effect, that of the prosecutor rather than the grand jury. [Citation.] To warrant dismissal of the indictment, [a] defendant must therefore show that the prosecutors prevented the grand jury from returning a meaningful indictment by misleading or coercing it." *DiVincenzo*, 183 Ill. 2d at 257-58.

¶ 29 In this case, defendant was charged under section 3(a)(1) of the Home Repair Fraud Act. Section 3(a)(1) provides, in relevant part, that home repair fraud is committed when a defendant "knowingly enters into an agreement or contract *** with a person for home repair, and he knowingly: *** promises performance which he does not intend to perform or knows will not be performed." 815 ILCS 515/3(a)(1) (West 2008). The State could not rely on subsection (c) to prove defendant's intent or knowledge, as that portion of the statute was severed from the rest of the statute in *Watts*. *Watts*, 181 Ill. 2d at 151. However, in answering questions from the grand jury, the State clearly relied on subsection (c) despite it being severed from the statute. The following exchange, in response to a question from the grand jury, follows subsection (c)'s unconstitutional presumption of intent:

"Q. [Assistant State's Attorney]: And does the statute also specifically show some examples of how intent to not finish can be inferred?

A. [Detective Bryant]: Yes.

Q. And one of those specific examples is if the defendant changes his business address and does not by writing notify the victim of that change of the address at the time of the change?

A. Yes.

Q. Is intent to not finish the project also shown by the fact that the defendant never made contact with the victim to make any other arrangements?

A. Yes.

Q. And is it also shown by the fact that the victim had no way either in person or by phone or by letter, for that matter, since the address was not existent to contact the contractor?

A. Yes."

This is clearly an incorrect statement of the law of home repair fraud. Before the grand jury, the prosecutor serves as an advisor and is supposed to "inform the grand jury of the proposed charges and the pertinent law." *DiVincenzo*, 183 Ill. 2d at 254. In this case, the prosecutor's

misstatement of the law made it easier to secure an indictment by informing the grand jury that the element of intent can be presumed.

¶ 30 Later in the grand jury proceedings, the grand jury asked the assistant State's Attorney, "Did [defendant] intend not to finish this project on the onset of accepting the job?", to which the following exchange occurred between the assistant State's Attorney and Detective Bryant:

"Q. [Assistant State's Attorney]: Detective, is it correct that that is not an element of the offense?

A. [Detective Bryant]: That's correct."

However, the statute clearly states that "A person commits the offense of home repair fraud when he knowingly enters into an agreement or contract *** and he knowingly: *** promises performance which he does not intend to perform or knows will not be performed[.]" 815 ILCS 515/3(a)(1) (West 2008). The language of the statute makes clear that defendant's intent at the time of the agreement is an element of the offense. In *Watts*, the defendant, like the defendant in our case, was charged under section 3(a)(1) of the Act. The supreme court noted that it was undisputed that defendant had entered into a contract for home repair, therefore; "the only question at trial was whether defendant had intended to perform the promised work at the time he entered into the contract." *Watts*, 181 Ill. 2d at 138. Further, the purpose of the Act "is to prohibit and prevent the knowing use of fraud and deceptive practices to induce an unwitting homeowner to enter into a contract for home repairs." *Thompson*, 275 Ill. App. 3d at 732. We hold that the assistant State's Attorney's response to the grand jury again misstated the law of home repair fraud. The comments by the assistant State's Attorney and the testifying witness incorrectly claim that intent is not an element of the crime. Instead of informing the grand jury of the law as it was required to do, the State represented to the grand jury two incorrect statements of the law.

¶ 31 However, misstatements of law by the prosecutor to the grand jury do not automatically result in the indictment being dismissed. Defendant must "show that such misconduct results in actual and substantial prejudice to him." *Fassler*, 153 Ill. 2d at 58. We hold defendant has met this burden here. Before the grand jury, Detective Bryant testified that defendant and Avila came to an agreement, Avila paid defendant $2,000, and defendant began the remodel work. Detective Bryant further testified that Avila paid defendant three additional checks for a total of approximately $6,000. After the last check on July 16, 2007, defendant stopped working. Detective Bryant stated defendant admitted to starting the work, but not finishing it. Defendant told Detective Bryant that he ran out of money and admitted that he did not notify Avila with any new information on how to contact him. Detective Bryant also testified that defendant never ordered kitchen cabinets, but admitted that defendant "did demolition work and *** put up some walls." Detective Bryant also testified that Avila could not reach defendant by phone after the first month of work because defendant's phone was disconnected. Avila went to the address listed as defendant's office, which was a vacant lot.

¶ 32 Significantly, the State did not present any evidence to the grand jury regarding defendant's intent to not perform the contract at the time the contract was formed, instead

its evidence concentrated only on what occurred once the contract had been formed and the work started. However, the assistant State's Attorney's two incorrect statements of law to the grand jury both addressed defendant's intent. In the first statement, the assistant State's Attorney presented to the grand jury incorrect law that would allow it to presume intent. In the second misstatement, the assistant State's Attorney denied that intent was even an element to be proven. The two misstatements affected the grand jury proceedings because without them, we cannot say that a true bill would have been returned. *DiVincenzo*, 183 Ill. 2d at 257 ("To warrant dismissal of the indictment *** [a] defendant must ordinarily show that *** any prosecutorial misconduct affected the grand jury's deliberations."); see also *People v. Oliver*, 368 Ill. App. 3d 690, 696-97 (2006) ("a due process violation consisting of prosecutorial misconduct before a grand jury is actually and substantially prejudicial only if without it the grand jury would not have indicted defendant").

¶ 33    The State maintains that defendant did not suffer actual and substantial prejudice because defendant did not show that the State acted intentionally in misstating the law before the grand jury. The State relies on the Second District's decision in *People v. Hart*, 338 Ill. App. 3d 983 (2003), to argue that defendant must show that the State intentionally misled the grand jury before dismissal of an indictment is warranted. In *Hart*, the majority stated "[i]n our view, however, there must be, at the very least, intent on the part of some State actor to materially mislead the grand jury in order to give rise to a violation of due process." *Hart*, 338 Ill. App. 3d at 991. Justice McLaren concurred, but disagreed with this statement by the majority, classifying it as "*obiter dicta*," and commented "it is incorrect to require deception on the part of a State actor" based on prior precedent. *Hart*, 338 Ill. App. 3d at 995 (McLaren, J., concurring). The majority in *People v. Oliver*, 368 Ill. App. 3d 690 (2006), also a Second District decision, agreed with Justice McLaren's concurrence. *Oliver*, 368 Ill. App. 3d at 696 ("Thus, in light of *DiVincenzo*, we hold that the State's presentation of deceptive evidence denied defendant due process, regardless whether the deception was intentional.").[5] We agree with Justice McLaren's concurrence in *Hart* and the majority in *Oliver*. The assistant State's Attorney's actions may or may not have been inadvertent; however, it is still the role of the prosecutor to present the "pertinent" law to the grand jury. *DiVincenzo*, 183 Ill. 2d at 254. Subjecting a defendant to criminal prosecution in this case based on the State's incorrect presentation of the law to the grand jury deprived him of his right to due process, whether the assistant State's Attorney's actions were intentional or not. To the extent that *Hart* conflicts with our holding in this case, we respectfully decline to follow it. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) (under the doctrine of *stare decisis*, "the opinion of one district, division, or panel of the appellate court is not

_____

[5]Justice Grometer concurred in *Oliver* and believed that it was not necessary to even address the issue of intent in that case. *Oliver*, 368 Ill. App. 3d at 700-02 (Grometer, J., concurring). Justice Grometer stated that he did not "believe that the majority's interpretation of *People v. DiVincenzo*, 183 Ill. 2d 239 (1998), is as straightforward as the majority concludes. Second, although the majority does not explicitly say so, the effect of its ruling in this case is to overrule our recent decision in *People v. Hart*, 338 Ill. App. 3d 983 (2003)." *Id.* at 700.

binding on other districts, divisions, or panels").

¶ 34 In making our decision, we note that at no time did the State attempt to amend the indictment after securing it. We also note that defendant properly preserved this issue for appeal by both filing a motion to dismiss the indictment before trial and objecting to the indictment after trial. The motion to dismiss the indictment is important because it occurred before defendant was found guilty.

¶ 35 In a petition for rehearing filed by defendant, he asserts that the conviction should be reversed outright because the evidence presented at trial was insufficient to support a conviction. We are not persuaded.

¶ 36 It is not the function of this court to retry a defendant when reviewing whether the evidence at trial was sufficient to sustain a conviction. *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). "Rather, in such cases the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The trier of fact is responsible for determining a witness's credibility and the weight to be given to a witness's testimony, as well as drawing any reasonable inferences from the evidence. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). Additionally, the trier of fact's findings of credibility are given greater weight because it saw and heard the witnesses. *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007). Circumstantial evidence can sustain a conviction, "provided that such evidence satisfies proof beyond a reasonable doubt of the elements of the crime charged." *Hall*, 194 Ill. 2d at 330. However, if the evidence is so unreasonable, unsatisfactory, or improbable that it raises a reasonable doubt as to a defendant's guilt, we will reverse a conviction. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 37 After reviewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime of home repair fraud beyond a reasonable doubt. The Act provides that "A person commits the offense of home repair fraud when he knowingly enters into an agreement or contract *** and he knowingly *** promises performance which he does not intend to perform or knows will not be performed." 815 ILCS 515/3(a)(1) (West 2008). It is undisputed the parties entered into an agreement. The State only had to prove at trial, like in *Watts*, "whether defendant had intended to perform the promised work at the time he entered into the contract." *Watts*, 181 Ill. 2d at 138; see also *Thompson*, 275 Ill. App. 3d at 732 ("The Act's goal is to prohibit and prevent the knowing use of fraud and deceptive practices to induce an unwitting homeowner to enter into a contract for home repairs."). We also note that circumstantial evidence can sustain a conviction. *Hall*, 194 Ill. 2d at 330.

¶ 38 In this case, circumstantial evidence from both Avila and Joaquin Mina showed that at the time of the agreement, defendant did not intend to perform. Avila testified that at the time she entered into the agreement with defendant, defendant "would need [$]2,000 a week before starting the job and the [$]2,000 was to order my kitchen cabinets, which would take two weeks to be delivered." Later, defendant promised Avila that the cabinets would be delivered and installed by July 20, 2007, almost two months after the contract was signed.

Despite both promises by defendant, he never ordered the cabinets, let alone installed them. Avila continued to pay defendant every few weeks at defendant's request. Mina testified that it took him five days to complete the work, whereas defendant had worked five weeks, completing minimal work, before quitting the job. Taking this evidence together, it is reasonable to believe that defendant never intended to perform the work promised. It is reasonable to believe that defendant did minimal work, while stretching that work over a five-week time period, to continue to ask Avila for more money. The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. This finding removes the risk of subjecting defendant to double jeopardy. See *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979).

¶ 39    Due to our conclusion in this case, we do not need to address defendant's remaining arguments.

¶ 40                                    CONCLUSION

¶ 41    The judgment of the circuit court is reversed. On remand, we direct the circuit court to dismiss the indictment without prejudice.

¶ 42    Reversed and remanded.

¶ 43    PRESIDING JUSTICE QUINN, specially concurring:

¶ 44    I agree with the majority that the State violated defendant's due process rights by presenting an incorrect statement of law. However, I disagree with the majority's assertion that "The comments by the assistant State's Attorney and the testifying witness incorrectly claim that intent is not an element of the crime." *Supra* ¶ 30.

¶ 45    The transcript of the grand jury proceedings reflects that the grand jury foreman asked the assistant State's Attorney (ASA), "Did [defendant] intend not to finish this project on the onset of accepting the job? The ASA then asked Detective Bryant:

"Q. [ASA]: Detective, is it correct that that is not an element of the offense?

A. [Detective Bryant]: That's correct."

¶ 46    The majority correctly point out that subsection (a)(1) of section 3, entitled "Home Repair Fraud," under which defendant was charged provides:

"A person commits the offense of home repair fraud when he knowingly enters into an agreement or contract, written or oral, with a person for home repair, and he knowingly:

(1) *** [P]romises performance which he does not intend to perform or knows will not be performed[.]" 815 ILCS 515/3 (West 2006).

The majority assert that "The language of the statute makes clear that defendant's intent at the time of the agreement is an element of the offense." *Supra* ¶ 30.

¶ 47    However, subsection 3(c) in pertinent part provides:

"Intent and knowledge shall be determined by an evaluation of all circumstances surrounding a transaction and the determination shall not be limited to the time of

contract or agreement." 815 ILCS 515/3(c) (West 2006).

¶ 48    I would read this "penultimate" sentence of subsection (c) to mean that the trier of fact need not limit its determination of when the accused formed the intent to defraud the victim to the time when the contract was entered into. This reading would be supported by Illinois Pattern Jury Instructions, Criminal, No. 13.64 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 13.64), which provides in pertinent part:

"Definition of Home Repair Fraud–Agreement or Contract

A person commits the offense of home repair fraud when he knowingly enters into a contract for an amount exceeding $1,000 with a person for home repair, and he knowingly

* * *

[3] promises performance which he does not intend to perform or knows will not be performed."

¶ 49    Defense trial counsel correctly recognized that this language did not restrict the jury to determine the defendant's intent at the time when the contract was entered into. That is why he asked that the jurors be given a nonpattern instruction reading: "A person commits home repair fraud when the did not intend to perform the promised work at the time he entered into the contract."

¶ 50    Having said this, I acknowledge that the majority are absolutely correct when they rely upon *People v. Watts*, 181 Ill. 2d 133 (1998), where our supreme court held, "There was no dispute that defendant had entered into a contract for home repair. Thus, the only question at trial was whether defendant had intended to perform the promised work at the time he entered into the contract." *Watts*, 181 Ill. 2d at 138.

¶ 51    Further, the court in *Watts* had a completely different interpretation of subsection (c) than I just presented.

"We believe that the penultimate sentence of subsection (c) is intended to assist a defendant by expanding the realm of relevant evidence which he may use to rebut the presumption. For example, if the State triggered the presumption by proving that a defendant had used an unqualified subcontractor, the defendant might attempt to rebut the presumption by introducing evidence of the subcontractor's satisfactory performance on prior projects. This would tend to show a good-faith belief on the defendant's part that the subcontractor was qualified and, therefore, that the defendant intended to perform the promised work. If subsection (c) did not include the penultimate sentence, the evidence might be considered irrelevant, because the ultimate issue is the defendant's intent at the time he entered the contract. However, by explicitly allowing the defendant to introduce evidence 'not limited to the time of the contract,' the sentence would allow the introduction of the evidence in the example." *Watts*, 181 Ill. 2d at 148-49.

¶ 52    A reading of *Watts* leads to the conclusion that the majority are correct in holding that the prosecutor misstated the law when he asked/told Detective Bryant that the State was not required to prove that the defendant had the intent not to finish the project when he entered

-14-

into the contract. This misstatement of law was erroneous but it did not constitute a denial "that intent was even an element to be proven," as the majority state twice. I agree with the majority that defendant has shown that this misstatement of law resulted in actual and substantial prejudice to the defendant. *Fassler*, 153 Ill. 2d at 58.

¶ 53     I also agree with the majority that *Watts* further held that "the presumption contained in subsection (c) is mandatory and, as such, is unconstitutional." *Watts*, 181 Ill. 2d at 149.

¶ 54     The prosecutor was relying on subsection 3(c)(2) when he asked Detective Bryant whether the statute allowed the grand jurors to infer the defendant's intent by defendant's failure to notify the victim of his change of address and the facts that defendant never made further contact with victim and the victim had no way to contact the defendant after he stopped working on the project. The ASA phrased the question as, "And does the statute also specifically show some examples of how intent to not finish can be inferred?"

¶ 55     The User's Guide to Illinois Pattern Jury Instructions, Criminal, at *x* (4th ed. Supp. 2011) provides:

> "Inferences are a staple of our adversary system and are essential to expeditious resolution of factual questions. *Funches*, 212 Ill. 2d at 339 ***. An inference is a factual conclusion that the jury may rationally draw in its discretion by considering other facts. *Id*. at 339 ***. By nature, inferences are permissive. *Id*. The jury is free to accept or reject a suggested inference and no burden is placed on the defendant. *Id*.; *Watts*, 181 Ill. 2d at 142 ***."

¶ 56     In *People v. Jordan*, 218 Ill. 2d 255 (2006), our supreme court considered section 12-21.6 of the Criminal Code of 1961, entitled "Endangering the life or health of a child" (720 ILCS 5/12-21.6 (West 2002)). It provides:

> "(a) It is unlawful for any person to willfully cause or permit the life or health of a child under the age of 18 to be endangered or to willfully cause or permit a child to be placed in circumstances that endanger the child's life or health, except that it is not unlawful for a person to relinquish a child in accordance with the Abandoned Newborn Infant Protection Act.
>
> (b) There is a rebuttable presumption that a person committed the offense if he or she left a child 6 years of age or younger unattended in a motor vehicle for more than 10 minutes." 720 ILCS 5/12-21.6(a), (b) (West 2002).

¶ 57     The *Jordan* court decided: "We hold that subsection (b) of section 12-21.6 of the Code creates an unconstitutional mandatory rebuttable presumption." *Jordan*, 218 Ill. 2d at 266. The court also held:

> "Although the State is constitutionally required to prove every element of a crime beyond a reasonable doubt [citation], the State may nonetheless rely upon certain presumptions and inferences to prove its case. *Pomykala*, 203 Ill. 2d at 202 ***." *Jordan*, 218 Ill. 2d at 265.

¶ 58     The court continued:

> "Finally, we consider the consequences of the presumption's invalidity in this case.

-15-

* * *

*** [W]e believe that a rational trier of fact could have found that defendant knowingly endangered his infant daughter's life or health by leaving her unattended in his vehicle. Several factors bear upon that determination, including the setting where the vehicle was parked, the weather conditions, *and the amount of time defendant left his daughter alone in the vehicle*." (Emphasis added.) *Jordan*, 218 Ill. 2d at 268-70.

¶ 59 The court therefore considered the length of time the child was left unattended even though the court struck down subsection (b), which listed this factor as the basis to apply the unconstitutional rebuttable presumption. 720 ILCS 5/12-21.6(b) (West 2002).

¶ 60 Applying the rationale of *Jordan* to the facts in the instant case, I believe that it would be proper for a prosecutor to argue that all of the factors listed in subsections (c)(1) through (c)(7) may provide the basis for an inference that a defendant is guilty of committing home repair fraud. 815 ILCS 515/3 (c)(1) through (c)(7) (West 2006). However, I agree with the majority that it was improper for the prosecutor to ask Detective Bryant whether the statute provided these factors as "examples," where this portion of the statute providing for an improper rebuttable presumption was struck down in *Watts*.

¶ 61 This issue is made all the important because, as a very recent law review article points out, "Today, seventeen criminal statutes still include some form of a mandatory presumption." Theodore A. Gottfried & Peter G. Baroni, *Presumptions, Inferences and Strict Liability in Illinois Criminal Law: Preempting the Presumption of Innocence?*", 41 J. Marshall L. Rev. 715, 722 (2008). In this very well-written article, the authors suggest that these statutes may pass constitutional muster by removing the "rebuttable presumption" language and replacing it with "it may be inferred," converting the mandatory presumption into a constitutionally acceptable permissive inference. Gottfried & Baroni, *supra*, at 723.

¶ 62 Finally, I disagree with the majority's discussion of the holdings in *People v. Hart*, 338 Ill. App. 3d 983 (2003), and *People v. Oliver*, 368 Ill. App. 3d 690 (2006). Both *Hart* and *Oliver* involved testimony of witnesses which turned out to be false.

¶ 63 *Hart* held that: "there must be, at the very least, intent on the part of some State actor to materially mislead the grand jury in order to give rise to a violation of due process." *Hart*, 338 Ill. App. 3d at 991. In doing so, the majority relied on *People v. J.H.*, 136 Ill. 2d 1 (1990), which held "[s]ome cases suggest [that undermining the integrity of the judicial process] may occur where a prosecutor deliberately or intentionally misleads the grand jury to the prejudice of the defendant." (Emphasis omitted.) *J.H.*, 136 Ill. 2d at 13.

¶ 64 The majority in *Oliver* held that "the State's presentation of deceptive evidence denied defendant due process, regardless [of] whether the deception was intentional." *Oliver*, 368 Ill. App. 3d at 696. In doing so, the majority relied on the holding in *People v. DiVincenzo*, 183 Ill. 2d 239, 257 (1998): "The due process rights of a defendant may be violated if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence." Justice Grometer concurred in *Oliver*, arguing that the above language did not support the majority's holding on the immateriality of the prosecutor's intention. In doing so, Justice Grometer cited another

portion of the holding in *People v. J.H.*: "A prosecutor should not be inhibited in his presentation of a case to a grand jury by fear of dismissal due to [this] erroneous, but honest, appraisal of the admissibility of certain evidence for trial purposes." *J.H.*, 136 Ill. 2d at 13; *Oliver*, 368 Ill. App. 3d at 701 (Grometer, J., concurring).

¶ 65        Based on the above discussion, I think that the majority in *Hart* and Justice Grometer's concurrence in *Oliver* are correct in requiring an intentional act on the part of a state actor when a defendant seeks to dismiss an indictment based on the presentation of allegedly false testimony to a grand jury. However, I do not believe that *Hart* or *Oliver* has any applicability to the instant case where the prosecutor misstated the law applicable to the charges presented to the grand jury. It is abundantly clear that the prosecutor was unaware of the holding in *Watts* and did not intentionally mislead the grand jury. Indeed, defense trial counsel told the trial court that he did not believe the prosecutor acted willfully. Consequently, I do not believe that the prosecutor's actions before the grand jury constituted prosecutorial misconduct. In the final analysis, however, I believe the defendant has met his burden of showing that the prosecutor's misstatement resulted in actual and substantial prejudice to him where the grand jury foreman specifically asked whether the defendant intended not to perform the work when he entered into the contract. *Fassler*, 153 Ill. 2d at 58. Consequently, I concur in the result reached by the majority.